## Guy C. Arnell, Plaintiff in Error, v. Superior Mirror Company, Defendant in Error.

### Gen. No. 6,486.

1. STATUTES, § 196*—*how intent of legislature in enacting is ascertained.* It is a general rule of construction of statutes that the intent of the legislature is to be ascertained from the words it employs and the courts cannot arbitrarily substitute other words.

2. STATUTES, § 196*—*what considered in determination of intent of legislature in enacting.* The intent of the legislature in enacting a statute is to be gathered from the words used, the evil to be remedied and the object to be attained.

3. MASTER AND SERVANT—*what poisons master not required to guard against by providing suitable working clothing for employee.* The legislature, in enacting section 2 of the Occupational Diseases Act (J. & A. ¶ 5434), providing that every employer in this State engaged in the carrying on of any process of manufacture or labor in which "sugar of lead, white lead, lead chromate, litharge, red lead, arsenate of lead, or paris green are employed, used or handled, or the manufacture of brass or the smelting of lead or zinc, which processes and employments are hereby declared to be especially dangerous to the health of the employees engaged in any process of manufacture or labor in which poisonous chemicals, minerals or other substances are used or handled by the employees therein in harmful quantities or under harmful conditions," shall provide proper working clothing, etc., did not intend to include all poisonous substances, and consequently did not intend to cover the use of silver nitrate.

4. MASTER AND SERVANT—*what is not an occupational disease.* Evidence *held* sufficient to show that silver nitrate poisoning is not an occupational disease and is not incident to the making of mirror glass.

5. MASTER AND SERVANT—*when artificial ventilation of factory not required.* Section 11 of the Health and Safety Act (J. & A. ¶ 5396), relating to artificial ventilation of factories and workshops, has no application where the room in a factory where an employee works has 2,000 cubic feet of air space for each person employed in such room.

6. MASTER AND SERVANT—*when shown that statute relating to removal by ventilating or exhaust devices of poisonous gases and dust in factory not applicable.* Evidence *held* sufficient to show

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

that nitrate of silver did not and could not come into the air from the steam or from the ammonia or from any dust in a room in defendant's mirror-plate factory, and hence section 12 of the Health and Safety Act (J. & A. ¶ 5337), relating to the removal by either ventilating or exhaust devices of all poisonous or noxious fumes or gases arising from any process, and all dust of a character injurious to the health of the persons employed, which is created in the course of a manufacturing process within a factory, mill or workshop, was inapplicable.

7. WITNESSES, § 279*—*when evidence on rebuttal inadmissible to impeach witness.* Evidence in rebuttal that an employee working for another mirror-plate factory was suffering from silver nitrate poisoning when he quit that employment and that he had discussed the subject with a witness for defendant is inadmissible, in an action by an employee under the Occupational Diseases Act, secs. 1, 2 (J. & A. ¶¶ 5433, 5434) to recover damages for silver nitrate poisoning received in a mirror-plate factory, and is inadmissible to impeach the witness for defendant where the attention of the latter was not drawn to any conversation with plaintiff's witness.

8. EVIDENCE, § 87*—*how fact that silver nitrate poisoning is incident to manufacture of mirrors may be proved.* The fact that silver nitrate poisoning is incident to the manufacture of mirrors by certain processes can only be proved by general evidence on the subject and not by specific examples supposed to have occurred in other factories.

9. MASTER AND SERVANT—*when poisoning shown to be occupational disease.* In order for silver nitrate poisoning to be peculiar to the work or process carried on in the manufacture of mirrors in a factory, or for that disease to be incident to the work or process, so as to constitute the disease an occupational disease within section 1 of the Occupational Diseases Act (J. & A. ¶ 5433), it must have happened before and must be such a disease as those familiar with the process would realize was liable to occur.

10. APPEAL AND ERROR, § 1241*—*when party cannot complain of error in instruction.* A party cannot complain of an instruction given for the adverse party containing an improperly substituted word where he asks for and obtains an instruction on the same subject containing the same mistake.

Error to the Circuit Court of Winnebago county; the Hon. JAMES S. BAUME, Judge, presiding. Heard in this court at the October term, 1917. Affirmed. Opinion filed April 9, 1918.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

CHARLES C. SPENCER, PHILIP H. TREACY, J. E. GOEM-
BEL and ROY F. HALL, for plaintiff in error.

R. K. WELSH, for defendant in error.

MR. JUSTICE DIBELL delivered the opinion of the
court.

The Superior Mirror Company, defendant in error
herein, hereinafter called the defendant, operated a
small factory at Rockford, in which it manufactured
mirror plates. Certain solutions were made and mixed
and applied to glass. Silver nitrate was used in this
mixture. Guy C. Arnell, plaintiff in error, hereinafter
called the plaintiff, was in the employ of the defend-
ant in that factory and in charge of the silvering and
polishing rooms and compounded the mixture used in
the process. He became ill and left the employment
of defendant, and after a long illness went to work
elsewhere in another business. He claims that his
illness resulted from silver nitrate poisoning, with
which he claims he became infected while in the employ
of defendant and because of its violation of certain
statutes. He brought this action to recover damages
therefor. He filed a declaration containing six counts.
He dismissed the last three counts at the close of all
the evidence, and they are not in this record. The
first count charged a violation of sections 1 and 2 of
the Occupational Diseases Act (J. & A. ¶¶ 5433, 5434).
The second count charged a violation of section 11 of
the Health and Safety Act (J. & A. ¶ 5396). The third
count charged a violation of section 12 of the last-
named act (J. & A. ¶ 5397). Defendant pleaded not
guilty. Upon a trial the court instructed the jury
to find the defendant not guilty under the second count,
and the first and third counts were submitted to the
jury and it returned a verdict of not guilty. Plaintiff
made a motion for a new trial, which was denied, de-
fendant had judgment in bar, and plaintiff prosecutes
this writ of error.

The first part of section 2 of the Occupational Diseases Act (J. & A. ¶ 5434) is as follows:

"Every employer in this State engaged in the carrying on of any process of manufacture or labor in which sugar of lead, white lead, lead. chromate, litharge, red lead, arsenate of lead, or paris green are employed, used or handled, or the manufacture of brass or the smelting of lead or zinc, which processes and employments are hereby declared to be especially dangerous to the health of the employees engaged in · any process of manufacture or labor in which poisonous chemicals, minerals or other substances are used or handled by the employees therein in harmful quantities or under harmful conditions, shall provide for," etc.

The words following contain the requirements which it is alleged defendant did not fulfil. It will be observed that silver nitrate is not one of the substances against which the first part of this section is directed. It is not named in that part of the section not above quoted. Plaintiff claims that the proper construction of this section required the court to place, after the words "the health of the employees" and before the following words, "engaged in any process of manufacture," a comma, where none appears in the statute, and follow that comma by these words, "and every employer of labor," and thus make this section include not only the specific poisons named in the first part of the section, but any and every other poisonous substance used by employers of labor. By the statute it is the employees who "are engaged." By the proposed insertion it is the employer of labor who is "engaged." It is a general rule of construction of statutes that the intent of the legislature is to be ascertained from the words it employs, and the courts cannot arbitrarily introduce other words. True, it is the intent of the lawmaker which is the law, but that intent is to be gathered from the words used, the evil to be remedied, and the object to be attained. Sometimes additional words may be implied under the principle, "*ejusdem*

*generis,''* but that principle is not applicable here. If the legislature had intended to include all poisonous substances it would have used some such general language. The fact that the language used was almost entirely confined to lead poisoning and that no general terms were employed convinces us that silver nitrate poisoning was not intended to be included. There is a slight ambiguity in the part of the section above quoted, which will in our opinion be much more simply removed by inserting before the words, "poisonous chemicals," the words "such" or "said." It follows that the trial court correctly held that this case did not come within said section 2.

Section 1 of said Act (J. & A. ¶ 5433), concerning occupational diseases covers any work or process "which may produce any illness or disease peculiar to the work or process carried on, or which subjects the employees to the danger of illness or disease incident to such work or process, to which employees are not ordinarily exposed in other lines of employment," and requires such employers to do certain things to prevent industrial or occupational diseases. There was much evidence on the question whether nitrate of silver poisoning is an occupational disease and whether it can be acquired from the use of silver nitrate in the solutions and mixtures employed by defendant in the process of making mirror glass. To fully describe those processes in language that would be understood by the ordinary reader would require much space and we think it unnecessary. It would also greatly extend this opinion to set out the testimony of each witness on that subject. We think it sufficient to say, that to put it mildly there appears to be a clear preponderance of the evidence that silver nitrate poisoning is not an occupational disease and is not incident to the making of mirror glass and cannot be obtained by conducting the processes and making the mixtures in the work plaintiff did for defendant. It

follows that the jury were warranted in finding defendant not guilty under the first count.

Section 11 of the Health and Safety Act (J. & A. ¶ 5396), has no application where the room in a factory where an employee works has 2,000 cubic feet of air space for each person employed in such room. The evidence plainly shows that there was much more than that air space in the room in which plaintiff did this work for defendant. Plaintiff introduced no evidence tending to make a case under that section, and the court properly directed a verdict for defendant as to that count.

The third count was under section 12 of the Health and Safety Act (J. & A. ¶ 5397). The first sentence of that section refers to gas from sewers and the like. There was no proof of that kind in this case. The second sentence is as follows:

"All poisonous or noxious fumes or gases arising from any process, and all dust of a character injurious to the health of the persons employed, which is created in the course of a manufacturing process, within such factory, mill or workshop, shall be removed, as far as practicable, by either ventilating or exhaust devices."

The count related to poisonous gases and dust resulting in the disease of silver nitrate poisoning of plaintiff. There were gases created in the processes carried on by plaintiff in defendant's factory from the use of ammonia and from bringing the mixture to a very high degree of heat. But there was a very clear preponderance of evidence that the nitrate of silver did not and could not come into the air from the steam or from the ammonia or from any dust in the room, and the verdict of the jury on that count was therefore justified by the evidence. Certainly, we cannot say that the jury should have found the other way under this count. The court did not err in refusing to grant a new trial.

Complaint is made that the court restricted the ex-

amination of Freeman, a witness for plaintiff. He was called in rebuttal to show that he formerly worked for another company engaged in the manufacture of mirrors and that he was suffering from silver nitrate poisoning when he quit that employment, and that he had discussed that subject with Nelson, a witness who had been examined for defendant. The ruling of the court was proper. As evidence to impeach Nelson, it was incompetent because Nelson's attention was not drawn to any conversation with Freeman. If it was intended to establish the case of plaintiff, it should have been introduced in chief and not by way of rebuttal. If Freeman had testified that the processes employed by this other company had produced silver nitrate poisoning in him, defendant must necessarily have been permitted to prove what those processes were which such other company employed, and whether the infection was silver nitrate poisoning or something else, and thus an immaterial issue would have been tried. We are of opinion that the contention of plaintiff that silver nitrate poisoning is incident to the manufacture of mirrors by the processes employed by defendant could only be proved by general evidence on that subject and not by specific examples supposed to have occurred in other factories. We approve the other rulings upon evidence of which complaint is made.

Objection is made to some instructions because they required the fumes and gases to be injurious to the health of plaintiff and others. Plaintiff contends that if he was so affected, he could recover, even if no one else had ever suffered from silver nitrate poisoning. The statute which we have called the Occupational Diseases Act contains the words "occupational diseases" in the title, and also in section 1, and it is evident that that term as used in that statute is defined in section 1 thereof as "any illness or disease peculiar to the work or process carried on, or which subjects the em-

ployees to the danger of illness or disease incident to such work or process, to which employees are not ordinarily exposed in other lines of employment." In order for silver nitrate poisoning to be peculiar to the work or process carried on by defendant or for that disease to be incident to that work or process, it must have happened before and must be such a disease as those familiar with the process would realize was liable to occur. Therefore the instructions in question were properly modified. Moreover, plaintiff used the same expression in the plural in some of his instructions. The word "and" was used in an instruction for defendant where "or" should have been used. We do not think it could have misled the jury. But plaintiff asked and obtained an instruction containing the same mistake on the same subject, and therefore cannot complain.

We find no reversible error in the record. The judgment is therefore affirmed.

*Affirmed.*